# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 25, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

| | | |
|---|---|---|
| **BRIAN L. TUCKER,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:23CV00239 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **HAROLD CLARKE,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Respondent. | ) | |
| | ) | |

*Brian L. Tucker, Pro Se Petitioner; Jason D. Reed, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Respondent.*

Petitioner, Brian L. Tucker, a Virginia inmate proceeding pro se, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Tucker challenges his confinement under a judgment entered by the Circuit Court of Halifax County, Virginia, convicting him of being a felon in possession of ammunition and a firearm and sentencing him to seven years' imprisonment. Upon review of the record, I conclude that the respondent's Motion to Dismiss must be granted and the habeas petition denied.

## I. BACKGROUND.

The Supreme Court of Virginia found the following facts when ruling on Tucker's state habeas corpus claims:

The record, including the trial transcript and trial exhibits, demonstrates Deputy Bush responded to a report of an incident at 1046 Jones Store Lane, a single-story house.  After encountering Kayla Miller, Deputy Bush sought and, assisted by Special Agent Jay George and Lieutenant Chris Yeatts, executed a search warrant at 1046 Jones Store Lane.  The officers knocked on the front door, received no response, and kicked the door in.

In the living room, under a couch cushion, the officers found an expended twelve-gauge shotgun shell.  Beyond the living room was a bedroom and a "junk room" containing "miscellaneous items thrown all over the place."

In the bedroom, the officers found the sole bed in the house, a dresser, a television, and a closet.  Inside the dresser drawers, the officers found articles of men's clothing and what appeared to be rounds of .22 caliber and .380 caliber ammunition.  Next to the ammunition, the officers found pill bottles bearing [Tucker's] name and bills bearing [Tucker's] name and addressed to 1046 Jones Store Lane. Under the bed, the officers found a black bag containing $3,140 in cash and a black wallet.  The wallet contained two social security cards, a North Carolina identification card, and a forklift driver's certification, all bearing [Tucker's] name.  Inside the closet, the officers found piles of assorted clothes and shoes, and, behind a hanging men's shirt, a loaded twelve-gauge shotgun with the safety off and a shell in the chamber.  Elsewhere in the bedroom, the officers found [Tucker's] high school diploma and a letter addressed to [Tucker] at 1046 Jones Store Lane.

In the "junk room," the officers found articles of both men's and women's clothing, some with tags still attached, a manila envelope bearing [Tucker's] name, a mason jar containing checks made out to [Tucker], and a dresser.  The checks bore dates indicating they were made out a few weeks before the search.  Inside the dresser, the officers found what appeared to be rounds of .22 caliber and .32 caliber ammunition.  The court admitted photographs corroborating the results of the officers' search, including pictures depicting the ammunition and the shotgun.  The officers did not find any person inside the house.

> [Tucker] was arrested later that day.  At the magistrate's office, Deputy Bush told [Tucker] he had executed a search warrant on 1046 Jones Store Lane.  [Tucker] responded that Deputy Bush "could not go into his house without him being there."  Deputy Bush "asked him was it his house," and [Tucker] responded, "yes, it's my house."  According to Deputy Bush, [Tucker] also told the magistrate that he lived at 1046 Jones Store Lane, it was "his house," and his mother sometimes stays there.
>
> Lieutenant Yeatts, who was called by the defense, testified he had seen [Tucker] at the residence several years prior.  When [Tucker] was arrested, he originally told Lieutenant Yeatts that 1046 Jones Store Lane was his house, then clarified "it was his people's house."  The court admitted a tax record demonstrating 1046 Jones Store Lane was owned by "Melissa D. Tucker" (Melissa).

Br. Supp. Mot. Dismiss Ex. 3, at 3–4, ECF No. 14-3.[1]

A jury convicted Tucker of being a felon in possession of ammunition, in violation of Va. Code Ann. § 18.2-308.2, and of possession of a firearm after being convicted of a non-violent felony within ten years, in violation of Va. Code Ann. § 18.2-308.2.  On December 12, 2017, the Halifax Circuit Court sentenced Tucker to seven years in prison.  Br. Supp. Mot. Dismiss Ex. 1, at 553–54, ECF No. 14-1.

Tucker's appellate counsel filed a petition for appeal to the Court of Appeals of Virginia, Record No. 0069-18-2.  Among other claims, counsel argued that the trial court erred in overruling defense counsel's motions to strike the charges that Tucker as a felon possessed a firearm and ammunition based on insufficient evidence

---

[1]  Page numbers to the record in this Opinion refer to the numbers assigned by the Court's electronic docketing system, not the page numbers on the individual documents, as many exhibits include numerous documents and page numbers.

of constructive possession.  Br. Supp. Mot. Dism. Ex. 4, at 9–13, ECF 14-4.  The

court of appeals denied Tucker's appeal by per curiam Order dated January 30, 2020,

and by three-judge panel by Order dated March 18, 2020.  *Id.* at 46-53, 57.  Tucker

appealed to the Supreme Court of Virginia, Record No. 200538, which refused his

appeal by Order dated October 26, 2020.  Br. Supp. Mot. Dismiss Ex. 5, at 37, ECF

No. 14-5.

Tucker filed a Petition for a Writ of Habeas Corpus in the Supreme Court of

Virginia on August 27, 2021.  He challenged his detention on these grounds:

I.  Tucker's constructive possession of the firearm and ammunition was
not established for either count;

II.  The prosecution engaged in misconduct and fraud upon the court;

III.  Ineffective Assistance of Counsels on both claims and failure to defend;
and

IV.  Virginia's direct appeal scheme is unconstitutional and deprived
Tucker of a constitutionally sound appellate process.

Br. Supp. Mot. Dismiss Ex. 2, at 5–6, ECF No. 14-2.  The Supreme Court of Virginia

denied Tucker's state habeas claims by Order dated December 2, 2022, Record No.

210843.  Br. Supp. Mot. Dismiss Ex. 3, at 1–18, ECF No. 14-3.

On April 23, 2023, Tucker signed and dated the current federal habeas corpus petition under 28 U.S.C. § 2254, and this court docketed it on May 1, 2023.[2] Liberally construed, Tucker's federal petition raises the following grounds for relief:

I.   Tucker's conviction results from insufficient evidence presented to establish that he constructively possessed either the gun or ammunition. Specifically, (a) the prosecution presented insufficient evidence that Tucker constructively possessed a firearm or ammunition; (b) witnesses were not sworn before testifying; and (c) Kaila Miller, who was present at the house during the search and who claimed the gun and ammunition belonged to Tucker, did not testify;

II.  Tucker's conviction was the result of prosecutorial misconduct and fraud upon the Court, because the prosecutor (a) permitted the presentation of false testimony by Deputies Bush and Yeatts regarding Tucker's prior statements about who owned the house; (b) misused leading questions to prosecution witnesses; (c) elicited false testimony that all evidence in the house pointed to Tucker; (d) relied on hearsay evidence from Tucker; and (e) Trial and appellate counsel were ineffective in failing to argue these issues; and

III. Tucker's trial and appellate counsel provided ineffective assistance by (a) failing to address the issues in Claims I and II; (b) failing to adequately defend him because of a faulty investigation; admitting in opening statements that the searched home was "Tucker's house," and only later contradicted that statement; (c) failing to offer as exculpatory evidence Yeatts' body camera footage of the arrest as impeachment; (d) failing to offer Bush's body camera footage of the search to show removal of Miller's belongings from the bedroom to impeach Bush; (e) failing to ensure the jury was instructed not to penalize Tucker for failing to testify; (f) agreeing that no instruction on inconsistent statements was necessary; (g) failing to call any witnesses on Tucker's behalf, even his mother who owned the house, and instead, calling a detective witness; and (h) Appellate Counsel also failed to address all these same issues.

---

[2] The respondent concedes that Tucker filed his § 2254 petition within the statutory time limit prescribed by 28 U.S.C. § 2244(d)(1). Br. Supp. Mot. Dismiss 4 n.1, ECF No. 14.

Pet. 4-7, 15–23, ECF No. 1.

The respondent has filed a Motion to Dismiss.[3]  Tucker has replied, making the matter ripe for disposition.

## II. DISCUSSION.

### A. Exhaustion and Procedural Default.

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A federal district court reviewing a § 2254 petition is also limited by the separate but related doctrines of exhaustion and procedural default.  Absent a valid excuse, a state prisoner must exhaust his remedies in the state courts before seeking habeas relief in federal court.  28 U.S.C. § 2254(b)(1)(A).  A petitioner satisfies the exhaustion requirement when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court."  *Pruett v.*

---

[3]  I note that the copy of Tucker's state habeas corpus petition attached as part of Exhibit 2 to the respondent's motion is clearly incomplete, as it does not include the many subclaims addressed by the Supreme Court of Virginia in its final habeas opinion.  The state court records initially provided also did not include video footage that the habeas court reviewed and discussed in its habeas opinion.  However, I have since received records directly from the Supreme Court of Virginia that include a supporting brief by Tucker, received on August 31, 2021, and that appears to include the habeas claims addressed by that court.  Counsel for the respondent has also provided this court with copies of the video clips referenced in the state court's habeas opinion.  Thus, I have considered these records in reaching my conclusions on Tucker's federal habeas claims.

*Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993).[4]  In other words, for proper exhaustion of state court remedies, the petitioner must have presented the same arguments and factual support to the Supreme Court of Virginia on direct appeal, or in a state habeas corpus petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (holding that for exhaustion, "the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition").

Tucker has exhausted state court remedies as to the issues raised in parts I, II, and III of his federal habeas petition.  Specifically, Tucker presented claims of insufficient evidence of constructive possession during his direct appeal proceedings.  He presented his remaining claims and the same or similar supporting facts and arguments in his state habeas petition to the Supreme Court of Virginia.

The respondent argues that Claim 1 (insufficient evidence) and Claim II (prosecutorial misconduct) in the federal habeas petition are procedurally defaulted, because the Supreme Court of Virginia in the state habeas proceeding found that the similarly identified claims in the state petition were procedurally defaulted under the state court rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974).  Under *Slayton*, "A prisoner is not entitled to use habeas corpus to circumvent the trial and

---

[4]  I have omitted internal quotation marks, alterations, and/or citations throughout this Opinion unless otherwise noted.

appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction. *Id*. If the inquiry "could have been raised and adjudicated at petitioner's trial and upon his [direct] appeal," then petitioner has] no standing to attack his final judgment of conviction by habeas corpus," based on that inquiry. *Id.*

If a state court has explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is also procedurally defaulted for purposes of federal habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). The rule in *Slayton* has been upheld as an independent and adequate state ground for dismissal of a federal habeas claim. *Prieto v. Zook*, 791 F.3d 465, 468–69 (4th Cir. 2015).

On direct appeal, Tucker presented part of his current Claim I by asserting that the evidence was insufficient to prove his constructive possession of the firearm and ammunition. Br. Supp. Mot. Dismiss Ex. 4, at 20, 21–24, ECF No. 14-4. The Court of Appeals of Virginia addressed aspects of this portion of federal Claim I on the merits. *Id.* at 49-52. The exhaustion doctrine under 28 U.S.C. § 2254(b) does not require a federal habeas petitioner to raise the same claim in his state court appeals and again in state habeas proceedings. *O'Sullivan*, 526 U.S. at 844. For this reason, I reject the respondent's procedural default argument as to the constructive possession portions of Claim I raised on direct appeal and will consider them on the merits with reference to the state appellate court findings.

In Tucker's habeas petitions, however, he raised additional facts and arguments in Claim I on the issue of sufficiency that he did not present during the appellate court proceedings, regarding unsworn witnesses and Miller's failure to testify. In addition, Tucker presented for the first time in his state habeas petition, and again in Claim II of the federal petition, entirely new arguments of prosecutorial misconduct and fraud. The Supreme Court of Virginia on habeas review found these claims and the misconduct and fraud claims to be procedurally barred under *Slayton*, because Tucker failed to raise them at trial or on appeal. I agree that these parts of Tucker's petition are procedurally barred in this federal proceeding.

A federal habeas court can consider a procedurally defaulted claim only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[5] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Cause for procedural default requires the existence of some objective factor, external to the defense and not attributable to the petitioner. *Id.* at

---

[5] To prove a fundamental miscarriage of justice to excuse a procedural default, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Brown has made no such argument in this case. To state a claim of actual innocence sufficient to excuse procedural default, a petitioner must show "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime if jurors had received specific, reliable evidence not presented at trial. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Tucker does not offer any new evidence on which jurors would likely have found him innocent of the offenses at issue in this case.

756–57.  To prove prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982).

Tucker alleges, as he did in his state habeas petition, that his trial and appellate attorneys' unreasonable failure to raise the issues addressed in Claims I and II present independent grounds for federal habeas relief, as also argued in Claim III. Attorney errors can serve as cause to excuse a procedural default, but only if the attorney's deficient performance rose to the level of constitutionally ineffective assistance of counsel under the Sixth Amendment.  *Coleman*, 501 U.S. at 754.  For reasons I will explain while discussing each of Tucker's claims of ineffective assistance below, I conclude that he has not demonstrated that any of counsel's challenged omissions violated his constitutional rights.   Therefore, Tucker's assertions of ineffective assistance cannot serve as cause to excuse his procedural defaults of other portions of Claim I or Claim II, and Tucker does not argue any other cause regarding these defaults.  For the reasons stated, and discussed further herein, I will grant the Motion to Dismiss as to Claims I and II as either procedurally defaulted or without merit.

B.  The Standard of Habeas Review under § 2254(d).

Under the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).  In the context of federal habeas review, the question is not whether a federal court would reach the same decision as the state court or even whether the federal court believes the state court's decision is correct.  A petitioner must convince the federal habeas court that the state court's decision was unreasonable, "a substantially higher threshold."  *Knowles v. Mirazayance*, 556 U.S. 111, 123 (2009).

> The term unreasonable refers not to ordinary error or even to circumstances where the petitioner offers a strong case for relief, but rather to extreme malfunctions in the state criminal justice system. . . . In other words, a federal court may intrude on a State's sovereign power to punish offenders only when a decision was so lacking in justification . . . beyond any possibility for fairminded disagreement.

*Mays v. Hines*, 592 U.S. 385, 391 (2021).

C.  Insufficiency of the Evidence.

Insufficiency of the evidence to support a state court conviction beyond a reasonable doubt is a constitutional due process claim.  *Jackson v. Virginia*, 443 U.S. 307, 322 (1979).  The legal standard for such a claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  Since Congress amended § 2254(d) as part of AEDPA, the Supreme Court has made it clear that

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.  And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012).   In other words, even when "[r]easonable minds reviewing the record might disagree" about the jury's findings and the state courts' rulings on sufficiency, "on habeas review that does not suffice to supersede" the state courts' rulings under the deference demanded by § 2254(d). *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).  To grant relief on a § 2254 habeas claim that centers on factual issues, such as a sufficiency of the evidence challenge,

"a federal habeas court must find the state-court conclusion an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 338 (citing § 2254(d)(2)).

On direct appeal, Tucker challenged the trial court's denial of his motions to strike the evidence as insufficient to prove that he constructively possessed the firearm or the ammunition. The Court of Appeals of Virginia denied relief on these claims in a detailed, per curium Order. In denying Tucker's subsequent appeal, the Supreme Court of Virginia did not issue an opinion. Accordingly, this court "looks through" the Supreme Court of Virginia's refusal of the appeal and reviews the last reasoned opinion addressing the issue — from the Court of Appeals of Virginia. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

The Court of Appeals of Virginia addressed and rejected this aspect of Tucker's sufficiency claim about the firearm on the merits:

> In general, when reviewing a challenge to the sufficiency of the evidence to support a conviction, an appellate court considers the evidence in the light most favorable to the Commonwealth, the prevailing party below, and reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it. If there is evidentiary support for the conviction, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.
>
> [Va.] Code [Ann.] § 18.2-308.2 provides that it is unlawful for any person who has been previously convicted of a violent felony to knowingly and intentionally possess a firearm. [Va.] Code [Ann.] § 18.2-308.2(A). A conviction for the unlawful possession of a firearm

can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary.

To establish constructive possession of the firearm by a defendant, the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control.

Although [Tucker] was not physically present in the house at the time the search warrant was executed, he made several statements showing that he lived at the house and that he was upset the officers had entered the house while he was not there. Further, the loaded shotgun was found in a bedroom closet containing men's clothing, and the safety was not activated on the shotgun. [Tucker]'s high school diploma was on the floor just outside the closet. The dresser in the bedroom also contained men's clothing, items containing [Tucker]'s name, and firearm ammunition. In addition, under the bed in the same room, officers found a bag containing over $3,000 in cash and a wallet containing social security cards, a North Carolina identification card, and a forklift operator card all in [Tucker]'s name. The bag was clean and did not contain dust. Checks made payable to [Tucker] from a masonry company were also in the same room, and [Tucker] had said that he worked "on the side" for the same masonry company. The defense introduced a tax map of Halifax County indicating that the owner of the house was Melissa D. Tucker, and [Tucker]'s last name is Tucker. In addition to the shotgun located in the room where the cash was stored, two pit bull dogs were tethered in the backyard of [Tucker]'s residence, one of which could reach a person trying to access the back steps of the house.

[The] factfinder ultimately remains responsible for weighing the evidence, as well as determining which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant. If there is evidence to support the convictions, the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial. The fact finder is permitted to make reasonable inferences from facts.

> From the evidence of [Tucker]'s statements, conduct, and the other circumstances of the case, the jury could have inferred that [Tucker] was aware of the presence and character of the shotgun located in the bedroom closet of his residence and that it was subject to his dominion and control.  Therefore, the evidence was sufficient to show that [Tucker] constructively possessed the firearm.

Br. Supp. Mot. Dismiss Ex. 4, at 49-51, ECF No. 14-4.  The court of appeals also

rejected Tucker's claim that the evidence was insufficient to support his conviction

for possession of ammunition as a felon:

> Bush's testimony showed that [Tucker] possessed ammunition for a firearm consisting of the combination of a casing, projectile, primer or propellant designed for use in a firearm.  Accordingly, the Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that [Tucker] was guilty of the charged offenses.

*Id.* at 52.

In Claim I of the federal habeas petition alleging insufficient evidence, Tucker

complains about evidence that was *not* before the jury — the prosecution produced

no evidence of Tucker's presence, his handling of the firearm or ammunition, his

fingerprints, his DNA, his ownership of the home, firearm, or ammunition.  He also

points to the presence of women's clothing indicating that others also lived at the

residence.  His opposition brief relies on an appellate decision, *United States v. Blue*,

957 F.2d 106, 107–08 (4th Cir. 1992).  In *Blue*, an officer testified that as he

approached a vehicle where the defendant was sitting, he saw the defendant's

shoulder "dip as if [he] were reaching under the seat with his right hand."  *Id.* at 107.

When officers later searched the vehicle, they discovered a loaded firearm under the defendant's seat. *Id.* The reviewing court found this evidence to be insufficient to establish the defendant's constructive possession of that firearm. *Id.* at 108.

I do not find the *Blue* case to be factually on point. Unlike that case, the evidence here showed that Tucker had relationships with the others who sometimes resided at the house where the firearm and ammunition were found, that he had sometimes referred to it as his house or his people's house, and that he had numerous personal possessions there. From the evidence the court of appeals highlighted of Tucker's past acts and statements and circumstances at the residence, jurors could reasonably have inferred that Tucker was aware of the presence and character of the firearm and ammunition and that these items were subject to his dominion and control in that residence.

Moreover, the *Blue* case involves a federal direct appeal, and appellate standards differ from those applicable in habeas proceedings. The appellate test in Virginia in a circumstantial evidence case is whether the Commonwealth has excluded all reasonable hypotheses of innocence. *Stawderman v. Commonwealth*, 108 S.E.2d 376, 380 (Va. 1959). A federal habeas court, however, does not apply this stricter state standard of review for sufficiency of the evidence, since such a state evidentiary rule does not rise to the level of a constitutional claim. *Inge v. Procunier*, 758 F.2d 1010, 1014 (4th Cir. 1985) (holding that in § 2254 cases, "*Jackson*

mandates application of a federal standard of review for sufficiency of the evidence because the substance of habeas corpus relief is based on federal due process grounds.").

Based on the totality of the evidence before the state appellate courts, I cannot find that Tucker is entitled to relief under § 2254(d) on his claim that the evidence was insufficient to support his convictions for constructive possession of a firearm and ammunition as a felon. He simply has not demonstrated that the rulings of the Virginia courts during his appeal proceedings were contrary to clearly established federal law on habeas claims of insufficient evidence. I will grant the Motion to Dismiss as to this portion of Claim I.

### D. Ineffective Assistance of Counsel.

When reviewing claims that counsel provided ineffective assistance at trial or on appeal, a federal court must apply a highly deferential standard. A petitioner must show (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of an exhausted § 2254 habeas claim, review of counsel's performance is "doubly deferential," because the *Strickland* standard overlaps with the deferential standard under 28 U.S.C. § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

To establish the element of deficient performance, a petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategic decisions. *Id.* at 689. Under § 2254(d), the performance question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard" of objective reasonableness. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To establish prejudice, a petitioner must show that but for counsel's challenged conduct, there is a "reasonable probability that . . . the result of the proceeding would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because deficient performance and prejudice are "separate and distinct elements" of an ineffective assistance claim, if the petitioner fails to establish one of these elements, the court may dismiss the claim without addressing the other element. *Spencer v. Murray*, 18 F.3d 229, 232–33 (4th Cir. 1994); *Strickland*, 466 U.S. at 697. I will apply these deferential standards in reviewing Tucker's ineffective assistance of counsel claims, all of which were presented to and rejected by the state habeas court.

Tucker argues in Claim III of the federal petition that trial and appeal counsel provided ineffective assistance regarding the issues in Claim I, alleging the Commonwealth's failure to prove his constructive possession of the firearm and ammunition. Pet. 7, ECF No. 1. The record indicates that trial counsel moved to strike both charges, and the state trial and appellate courts found the evidence to be sufficient to support findings that Tucker constructively possessed both items for which he was convicted. As to the ineffective assistance claims, the Supreme Court of Virginia on habeas rejected this claim under both parts of *Strickland*:

> Counsel offered no argument on the motion to strike the count of possession of a firearm. On the count of possession of ammunition, counsel asserted that under Code § 18.2-308.2, "ammunition" means the "combination of a cartridge, projectile, primer, or propellant designed for use in a firearm." Counsel argued that although the officers had found items that appeared to be ammunition, no evidence demonstrated whether the cartridges contained the incendiary element necessary to propel a bullet. The court overruled the motion. Trial counsel renewed this motion to strike without additional argument before closing argument. In closing argument, trial counsel argued the evidence did not prove petitioner lived at the house, the evidence demonstrated multiple people lived there, and the police deficiently investigated the case by failing to have any of the seized items tested for DNA or fingerprints. Further, trial counsel argued that "[n]obody can put that gun into [petitioner's] hands at any point" and "[n]obody can show that he knew it was there."

> Counsel could have reasonably determined the Commonwealth had presented sufficient circumstantial evidence to present a jury question as to whether [Tucker] knew of the shotgun and ammunition, and it would be more effective to argue to the jury that they should not credit the Commonwealth's evidence. Substantial evidence — including but not limited to social security cards, an ID card, a high school diploma, men's clothing, medication, correspondence, and

checks — demonstrated [Tucker] lived at the house and slept in the bedroom where the shotgun was found. [Tucker] admitted to both Lieutenant Yeatts and Deputy Bush that he lived at this address. Both the shotgun and the ammunition were found in the bedroom, easily accessible and alongside [Tucker]'s clothing. The shotgun was in a state suggesting its owner intended it to be ready for immediate use. An expended shotgun shell was found in the living room. The character and nature of both the shotgun and the ammunition were immediately apparent. Accordingly, trial counsel could have reasonably concluded that a motion to strike on this basis was unlikely to succeed. . . .

Br. Supp. Mot. Dismiss Ex. 3, at 4–5, ECF No. 14-3.

In the federal habeas proceeding, Tucker fails to demonstrate that counsel had additional factual bases on which to argue a motion to strike regarding possession of either item. Mere failure to test for DNA or fingerprints, the presence of other individuals' belongings, and Miller's failure to testify do not contradict the totality of the evidence from which the jury could reasonably have concluded that Tucker spent time at the house and knew of and had ready access to the firearm and ammunition located near his belongings there. Applying the deferential standard in § 2254(d), I cannot find that the state court's ruling on this issue was contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts.

The state habeas court also found no merit under *Strickland* regarding Tucker's challenge to appellate counsel's handling of the constructive possession issue.

The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Moreover,

the record, including the pleadings filed in the Court of Appeals, the
pleadings filed in this Court, and the order of the Court of Appeals
denying the petition for appeal, demonstrates appellate counsel
assigned error to the sufficiency of the evidence to prove [Tucker]
possessed the shotgun and argued that evidence [Tucker] lived at the
house, standing alone, was insufficient to establish his constructive
possession of the shotgun found inside. [Tucker] fails to articulate what
more counsel should have done to "adequately argue" the evidence was
insufficient to support his conviction for possession of the shotgun.

. . . Further, [Tucker] fails to explain why a challenge to the
sufficiency of the evidence to prove constructive possession of the
ammunition would have succeeded, given the Court of Appeals rejected
the same argument with respect to the shotgun. Thus, [Tucker] has
failed to demonstrate that counsel's performance was deficient or that
there is a reasonable probability that, but for counsel's alleged error, the
result of the proceeding would have been different.

*Id.* at 5–6.  Under § 2254(d), I cannot find that the state court's ruling on this issue

was contrary to, or involved an unreasonable application of, *Strickland* as

established federal law or was based on an unreasonable determination of the facts.

Tucker also implies in Claims I and III that counsel failed to argue a

reasonable hypothesis of innocence — that others who owned (Melissa Tucker) or

resided (Miller) at the residence might have owned the firearm and ammunition, or

knew who did.  The Supreme Court of Virginia rejected Tucker's ineffective

assistance claims on these allegations under both prongs of *Strickland*.

The record, including the trial transcript, demonstrates trial counsel
argued in closing that Miller, who set in motion the events leading to
the search of the house, was not sufficiently investigated by the police
as a possible owner of the shotgun and ammunition. Thus, counsel did
argue the evidence did not exclude the reasonable hypothesis that the
firearm and ammunition belonged to Miller, and [Tucker] fails to

> identify any evidence upon which counsel could have further argued
> this point. Similarly, [Tucker] identifies no evidence upon which trial
> counsel should have asserted Miller planted the shotgun and
> ammunition.    Accordingly, trial counsel could have reasonably
> concluded a jury was unlikely to accept this hypothesis as reasonable,
> given the substantial evidence demonstrating [Tucker] lived in the
> house, the visibility and accessibility of the shotgun and ammunition,
> and the lack of evidence demonstrating Miller planted either the
> shotgun or the ammunition.

*Id.,* at 6-7. The Court found that Tucker "failed to identify any evidence upon which

counsel could have further argued the shotgun and ammunition belonged to

Melissa." *Id.* at 8. Moreover, the Court also noted that counsel did submit evidence

about Melissa's ownership of the house and during closing arguments, criticized the

police for failing to investigate whether Melissa, as the homeowner, also owned the

firearm and ammunition. *Id.* at 7. In any event, even if someone else owned the

firearm or ammunition, the evidence, as a whole, supported the jury's finding that

Tucker must have known of its presence in the residence and could have exercised

dominion and control over it.

   As to the constructive possession claim against appellate counsel, the state

court found that Tucker had failed "to articulate why appellate counsel's selection

of issues to address on appeal was objectively unreasonable." *Id.* at 8 (*citing Jones*,

463 U.S. at 751–52). Specifically, the Court found that "counsel could have

reasonably determined any argument that the evidence was insufficient, as a matter

of law, to prove petitioner possessed the shotgun and ammunition simply because

Melissa was the record owner of the house in which ample evidence proved [Tucker] lived would have no likelihood of success on appeal." *Id.* The same is true of Miller's presence outside the house and her failure to testify — neither of these facts supported an argument of insufficiency, given circumstances the jury found to support a finding of Tucker's constructive possession of the firearm and the ammunition. Under § 2254(d), I cannot find that the state court's rulings on the constructive possession issue were contrary to, or involved an unreasonable application of, Strickland or was based on an unreasonable determination of the facts.

Tucker asserts in Claim III, Pet. 7, ECF No. 1, that trial counsel should have objected to the failure to place each witness under oath before his testimony. The Supreme Court of Virginia expressly found that "[t]he record, including the preliminary hearing transcript, demonstrates the Commonwealth's witnesses testified under oath." Br. Supp. Mot. Dismiss Ex. 3, at 1, ECF No. 14-3. Similarly, the state court found that the trial transcript reflected that each witness during that proceeding "testified under oath." *Id.* at 2. The state court then ruled that Tucker's ineffective assistance claim failed under both facets of the *Strickland* standard.

I agree with this finding. I have reviewed the transcripts of the preliminary hearing and trial, which include notes indicating that each of the witnesses was sworn before testifying. Br. Supp. Mot. Dismiss Ex. 1 at 53, 302, 406, 414, 418-19,

and 459, ECF No. 14-1. Therefore, counsel had no factual basis to argue that any unsworn witness presented testimony at the preliminary hearing or trial, and no such issue existed on which to appeal. As such, Tucker fails to show that counsel's performance was deficient in that regard, or that it prejudiced him under the *Strickland* standard. Under § 2254(d), I cannot find that the state court's rulings on this issue were contrary to, or involved an unreasonable application of, Strickland or was based on an unreasonable determination of the facts.

Tucker's Claim II, alleging prosecutorial misconduct and fraud, asserts that the Commonwealth knowingly produced or failed to correct false testimony to which counsel should have objected or appealed. The Supreme Court of Virginia construed this claim as arising under *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959), recognizing a due process violation when the prosecution knowingly presents false evidence. "The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness." *Id.*

Tucker contends that trial and appellate counsel should have objected because the Commonwealth produced still photographs of items found during the execution of the search warrant rather than presenting body camera video footage of the search. The Supreme Court of Virginia rejected this claim under both prongs of *Strickland*.

> [T]o find a violation of Due Process rights under *Napue*, a court must determine the testimony was false, the prosecution knew of the falsity, and the falsity affected the jury's judgment. *Teleguz v. Commonwealth*, 273 Va. 458, 491-92 (2007). [Tucker] fails to identify any facts or authority upon which either counsel could have argued the admission of the still photographs constituted a deliberate elicitation of false testimony by the Commonwealth. [Tucker] fails to identify any other legal basis upon which either counsel could have sought exclusion of the photos and fails to explain how a motion to exclude would have benefited his defense.

Br. Supp. Mot. Dismiss Ex. 3, at 8–9, ECF No. 14-3.

I agree Tucker has shown no basis to exclude the still photos as false evidence. Indeed, the photos were taken from the very video footage that Tucker believes should have been shown to the jury, and he fails to argue how counsel could reasonably or successfully have argued that the still photos from that footage were not accurate depictions of the search scene. Under § 2254(d), I cannot find that the state court's rulings on this issue were contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts.

Tucker next contends in Claim II that trial and appellate counsel were ineffective when they failed to challenge the prosecutor's supposedly knowing use of false testimony from Bush and Yeatts that Tucker claimed the house on Jones

Store Lane as his.[6]  Pet. 12-13, ECF No. 1.  The Supreme Court of Virginia reviewed

and rejected this claim:

> [Tucker] contends he was denied the effective assistance of counsel
> because trial and appellate counsel failed to challenge the
> Commonwealth's elicitation of Deputy Bush's false statement that
> [Tucker] admitted the house was his.  [Tucker] asserts he never made
> this statement, and that this testimony was inconsistent with Deputy
> Bush's testimony at the preliminary hearing.
>
> The Court holds this portion of claim (II) satisfies neither the
> "performance" nor the "prejudice" prong of the two-part test enunciated
> in *Strickland*.  The record, including the preliminary hearing transcript
> and trial transcript, demonstrates that at the preliminary hearing,
> Deputy Bush testified [Tucker] told him, "it was his house and I had no
> right to go into his house."  Deputy Bush's testimony at trial was the
> same.  When asked at trial whether [Tucker] mentioned anything about
> anybody else living there, Deputy Bush stated, "He told me sometimes
> his mother comes and stays there."  Trial and appellate counsel could
> have reasonably concluded these testimonies were consistent and
> determined not to challenge Deputy Bush's trial testimony as
> deliberately false, given the evidence connecting [Tucker] to the home
> and the lack of evidence demonstrating Deputy Bush had a motive to
> fabricate.  [Tucker] offers no other basis upon which either counsel
> could have challenged Deputy Bush's statement at trial as false.

Br. Supp. Mot. Dismiss Ex. 3, at 9, ECF No. 14-3.  The state court's records support

these factual and legal findings.  Br. Supp. Mot. Dismiss Ex. 1, at 63, ECF No. 14-

---

[6] Tucker denies ever claiming the house as his, complains that the prosecutor "lead
Bush to say so" during the preliminary hearing, and that Bush's testimony at trial was not
consistent with his statements at the preliminary hearing and, therefore, false.  Pet. 12, ECF
No. 1.  Tucker also complains that Yeatts falsely stated that Tucker claimed it was his
house during Yeatts' traffic stop and arrest of the defendant.  Again, Tucker denies making
any such statement and contends that video footage of the arrest will disprove Yeatts'
testimony.  *Id.* at 12-13.

1 (Bush testifying Tucker said "it was [Tucker's] house and I had no right to go into his house"); *Id.*, at 375 (Bush testimony at trial that Tucker said "sometimes his mother comes and stays" at the house). Under § 2254(d), I cannot find that the state court's rulings on this issue were contrary to, or involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.

Also in Claims II and III, Tucker complains that the prosecutor elicited false testimony from Yeatts that Tucker claimed the house as his. Pet. 12-13, ECF No. 1. He further claims that video footage proves the falsity of Yeatts' statements. The state habeas court reached the opposite conclusion:

> The record, including the trial transcript and Lieutenant Yeatts' body camera video depicting [Tucker]'s arrest, demonstrates Lieutenant Yeatts stated at trial that "[Tucker] said it was his house. Then he said it was his people's house." In the video, [Tucker] tells Lieutenant Yeatts he was attempting to get away from Miller. Lieutenant Yeatts asks, "Well, why was you up that end?" [Tucker] responds, "Up where?" Lieutenant Yeatts clarifies, "At her house." [Tucker] responds, "She was at my house!" Lieutenant Yeatts asks, "Where you live at, on Jones Store?" [Tucker] responds, "Yeah, that's my, my people's house." Lieutenant Yeatts asks, "I thought you lived over there next to, uh, round the corner." [Tucker] responds, "No."

> Thus, [Tucker] did tell Lieutenant Yeatts it was his house and then that it was his people's house, as Lieutenant Yeatts testified, and counsel was not ineffective for failing to argue otherwise. Further, trial counsel could have reasonably concluded the video would be more harmful than helpful as it corroborated Lieutenant Yeatts' testimony.

Br. Supp. Mot. Dismiss Ex. 3, at 10, ECF No. 14-3. My review of the video footage supports these findings by the state courts. Therefore, under § 2254(d), I cannot find

that the state court's rulings on this alleged prosecutorial misconduct claim were contrary to, or involved an unreasonable application of, *Strickland* or were based on an unreasonable determination of the facts.

Tucker next complains in Claim II about Bush's "false statement" that "all the evidence" pointed toward Tucker.  Pet. 13, ECF No. 1.  The state habeas court found no falsity:

> Understood in context, Deputy Bush's statement was not an assertion that the investigation uncovered no evidence connecting any person other than [Tucker] to the house, but a characterization of his thought process in deciding not to have the items tested for DNA because the evidence overwhelmingly suggested [Tucker] was the primary occupant.  Indeed, moments before this exchange, Deputy Bush testified the officers found articles of women's clothing inside the house and that a few of the pill bottles found inside the dresser bore the name "Gloria Tucker."  Accordingly, trial and appellate counsel could have reasonably concluded a claim of prosecutorial misconduct under *Napue* was without merit, and [Tucker] fails to demonstrate a reasonable likelihood that such a claim would have succeeded.

Br. Supp. Mot. Dismiss Ex. 3, at 11, ECF No. 14-3.

From review of the record, I agree that Bush's challenged statement was not perjury, but is properly understood as a reasonable explanation of why he saw no need to pursue certain avenues of investigation.  Therefore, under § 2254(d), I cannot find that the state court's rulings were contrary to, or involved an unreasonable application of *Strickland* or were based on an unreasonable determination of the facts.

In Claim II, Tucker also complains that the prosecution used leading questions to Bush and Yeatts, and counsel failed to object.  The Supreme Court of Virginia ruled against Tucker on this claim:

> [Tucker] asserts the Commonwealth led Deputy Bush to testify that [Tucker] admitted 1046 Jones Store Lane was his house; that his mother stayed there; that the officers found male clothing inside the dresser and closet; and that the pill bottles the officers discovered bore petitioner's name.  [Tucker] also asserts the Commonwealth led Lieutenant Yeatts to testify that he recognized [Tucker].  [Tucker] further contends trial and appellate counsel failed to raise that these leading questions violated his right to confront the witnesses against him because the Commonwealth's Attorney testified without being available for cross-examination.

*Id.*, at 12.  The habeas court rejected this claim under both facets of *Strickland*, finding no evidence that the challenged questions elicited false information or that counsel could reasonably have argued that the prosecutor was using leading questions for that reason.  The habeas court further found that "many of the questions [Tucker] objects to were not leading," and counsel could reasonably have believed objections to them would not have benefitted Tucker's case.  *Id.*

> Additionally, even where the Commonwealth asked leading questions, as it did regarding Lieutenant Yeatts' recognition of [Tucker], trial counsel could have reasonably concluded the court would not sustain his objection, given the trial court's discretionary authority to allow leading questions to develop testimony on direct examination.  *See* Rule 2:611(c).

> Moreover, [Tucker] identifies no authority upon which either trial or appellate counsel could have advanced an argument that the Commonwealth's leading questions violated his rights under the Confrontation Clause.

*Id.*, at 13.  I agree that the state habeas court's conclusions are supported by the record and reflect counsel's reasonable legal strategy decisions.  *Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy").  Therefore, under § 2254(d), I cannot find that the state court's rulings were contrary to, or involved an unreasonable application of, *Strickland* or were based on an unreasonable determination of the facts.

In Claim II, Tucker further argues that both trial and appellate counsel should have objected because the prosecutor wrongfully elicited hearsay statements from Bush and Yeatts about what Tucker said to them, allegedly in violation of his right to remain silent.  Pet. 15-16, ECF No. 1.  The Supreme Court of Virginia on habeas found that this claim without merit under *Strickland*:

> Trial counsel could have reasonably determined [Tucker]'s statements were not excludable as hearsay.  Rule 2:803(0) (A statement offered against a party that is the party's own is admissible against him).  Accordingly, [Tucker] has failed to demonstrate trial counsel was ineffective for failing to raise this issue.
>
> Nor has [Tucker] demonstrated appellate counsel was ineffective for failing to raise this issue.  The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal.  [Tucker] fails to articulate the reasons why appellate counsel's selection of issues to address on appeal was objectively unreasonable.

Br. Supp. Mot. Dismiss Ex. 3, at 13–14, ECF No. 14-3.  The state court's conclusion, that Tucker's trial counsel did not object because statements of the defendant are not hearsay, is neither deficient performance nor prejudicial to the defense.  *Strickland*, 466 U.S. at 694.  Moreover, the principle that appellate counsel need not raise every nonfrivolous claim on appeal is well established and effective.  *Burger v. Kemp*, 483 U.S. 776, 784 (1987) ("[T]he process of winnowing out weaker claims on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.").  Under § 2254(d), I cannot find that the state court's rulings were contrary to, or involved an unreasonable application of, *Strickland* or were based on an unreasonable determination of the facts.

In Claim III, Tucker raises other claims that counsel provided ineffective assistance.  Here, he first faults trial counsel for an incomplete investigation of ownership of the house that law enforcement searched and for making inconsistent statements about that issue during argument.[7]  The Supreme Court of Virginia rejected these claims under both aspects of *Strickland*:

---

[7]  Tucker also alleges that counsel failed to "preserve the record of [Tucker]'s presence before the magistrate when he allegedly made a false admission" that the searched house was his.  Pet. 16, ECF No. 1.  Tucker offers no evidence, however, that his encounter with the magistrate was recorded in any manner or that any constitutional right required it to be.  Therefore, I do not consider this allegation to be a separate habeas claim.

> The record, including the trial transcript, demonstrates trial counsel
> stated in opening statement: "However, the facts as [the
> Commonwealth] laid them out, I believe, will present a far less
> straightforward, well, obviously, this is [Tucker's] house. The
> Commonwealth may be able to show some association of [Tucker] with
> this house, but largely what you will be confronted with is an absence
> of evidence." Understood in context, trial counsel's statement is a
> characterization of what he expected the Commonwealth to argue, not
> a concession from the defense that [Tucker] owned the house. Indeed,
> trial counsel later offered into evidence tax records demonstrating
> Melissa owned the property and argued in closing that the police had
> ignored the possibility that Melissa possessed the firearm and
> ammunition.

Br. Supp. Mot. Dismiss Ex. 3, at 14, ECF No. 14-3. Actions or omissions by counsel that can be considered sound trial strategy do not constitute deficient performance. *Strickland*, 466 U.S. at 689. I cannot find that the state court's ruling here was contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts.

Next in Claim III, Tucker complains that counsel should have shown video footage to prove officers moved women's clothing out of the bedroom and to impeach Bush's testimony about the search.[8] The state court rejected this claim under both parts of *Strickland*:

> The record, including the trial transcript and the body camera video
> depicting the officers' search of the house, demonstrates counsel could
> have reasonably determined to avoid having the video introduced into
> evidence because it would have undermined [Tucker]'s defense. The

---

[8] In Claim III, Tucker reraises his claim that counsel should have used video footage of the arrest to impeach Yeatts' testimony that Tucker claimed the house was his. For reasons already stated, this claim fails under *Strickland* and § 2254(d).

> video neither depicts the officers removing women's clothing from the
> bedroom nor otherwise contradicts Deputy Bush's testimony.  On the
> contrary, the video could conceivably undermine [Tucker]'s defense
> because it demonstrates the shotgun was immediately visible upon
> opening the closet door.

Br. Supp. Mot. Dismiss Ex. 3, at 15, ECF No. 14-3.  After viewing the video of the

search, I agree that counsel reasonably could have believed showing it to jurors

would not aid Tucker's defense in any way.  Thus, under § 2254(d), I cannot find

that the state court's rulings were contrary to, or involved an unreasonable

application of, *Strickland* or were based on an unreasonable determination of the

facts.

Another part of Claim III contends that trial counsel failed to ensure that the

jury was properly instructed on Tucker's decision not to testify.  Pet. 17, ECF No. 1.

The state habeas court found that this claim failed under both facets of *Strickland*.

> The record, including the trial transcript, demonstrates the trial court
> instructed the jury: "The defendant does not have to testify.  And the
> exercise of that right cannot be considered by you."  [Tucker] offers no
> explanation why this instruction was deficient and alleges no facts
> demonstrating the jury misunderstood the court's instruction or
> impermissibly considered his decision not to testify.

Br. Supp. Mot. Dismiss Ex. 3, at 15, ECF No. 14-3.

In the federal petition, Tucker contends that counsel was ineffective in failing

to request an instruction directing the jury "that no inference of guilt may be drawn

from [Tucker]'s decision not to testify, as he had a right to have the jury instructed

on." Pet. 17, ECF No. 1 (citing *Carter v. Kentucky*, 450 U.S. 288, 305 (1981)

(holding that "a state trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify") and *Portuondo v. Agard*, 529 U.S. 61, 65 (2000) (finding no constitutional problem with prosecutor's summation comments on defendant's presence in the courtroom as opportunity to tailor his testimony). I cannot find that either of these cases, or any other, recognizes a constitutional right for Tucker to have received a jury instruction of the exact nature he describes. Indeed, the instruction the trial court gave meets the requirement recognized in the *Carter* case to "minimize the danger" that jurors would consider Tucker's failure to testify as evidence. 450 U.S. at 305. I find no merit under either part of Strickland to this ineffective assistance claim. Thus, under § 2254(d), I do not find that the state court's rulings were contrary to, or involved an unreasonable application of, federal law or were based on an unreasonable determination of the facts.

Also in Claim III, Tucker complains that counsel conceded that no instruction on inconsistent statements was necessary in the case. Pet. 17, ECF No. 1. At trial, the judge stated: "Do we have any testimony — any evidence of a witness making testimony inconsistent with what he or she said before?" Br. Supp. Mot. Dismiss Ex. 1, at 477, ECF No. 14-1. Tucker's counsel stated, "Not to my knowledge, Your Honor." *Id.* at 478. The Supreme Court of Virginia rejected Tucker's habeas claim on this exchange under both parts of the *Strickland* analysis: "[Tucker] identifies no

prior inconsistent statement requiring an instruction.  Further, [he] does not explain how a prior inconsistent statement instruction would have aided his defense."  Br. Supp. Mot. Dismiss Ex. 3, at 16, ECF No. 14-3.  As Tucker fails to demonstrate any deficient performance or resulting prejudice from this alleged error by counsel, I also cannot find, under § 2254(d), that the state court's ruling was contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable determination of the facts.

Next in Claim III, Tucker faults counsel for failing to call any witnesses on Tucker's behalf and for calling Yeatts, a law enforcement officer.  Pet. 18, ECF No. 1.  Tucker asserts, as he did in his state petition, that counsel should have called his mother, Melissa, who stated in an affidavit that she owns the house, that Tucker and Miller were living there temporarily, and that the firearm and ammunition in the house belonged to a friend of hers, not to Tucker.  In this affidavit, Melissa declined to name the owner of these items, however.

The state habeas court found no merit to this claim under either part of *Strickland*:

> Counsel could have reasonably concluded Melissa's admission that [Tucker] lived at the house would undermine [his] defense.  *See Prieto v. Warden*, 286 Va. 99, 114 (2013) ("Counsel is not ineffective for failing to present evidence that has the potential of being 'double-edged.'").  Additionally, the benefit in her testimony — her claim that she owned 1046 Jones Store Lane — would have been cumulative with the tax record admitted into evidence.  Further, even if Melissa had

testified and identified the purported owner of the shotgun, it would not have undermined the evidence that [Tucker] possessed it.

As to Lieutenant Yeatts, [Tucker] offers no explanation why counsel's decision to call the officer was unreasonable. Further, [Tucker] fails to identify any additional witnesses counsel should have called or explain what their testimony would have been or how it might have benefitted [Tucker]'s defense.

Br. Supp. Mot. Dismiss Ex. 3, at 16–17, ECF No. 14-3.

I agree with the state court's assessment. It is well established that under the *Strickland* standard, courts must "give counsel wide latitude in determining which witnesses to call as part of their trial strategy." *United States v. Dyess*, 730 F.3d 354, 364 (4th Cir. 2013). Tucker has not shown that counsel's witness choice was unreasonable, or that another decision on witnesses would have resulted in a different outcome at trial. Therefore, the claim is without merit under *Strickland*, and I must dismiss this claim under § 2254(d).

Tucker also complains in Claim III that counsel failed to investigate and present a defense. As the state court found, however, Tucker

fails to proffer what favorable evidence additional investigation would have produced or articulate how such evidence might have benefitted his case. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.").

Br. Supp. Mot. Dismiss Ex. 3 at 17, ECF No. 14-3.  I agree with the state court that this claim fails under both facets of *Strickland*, and I must dismiss this claim under § 2254(d).

Finally, Tucker complains in Claim III that appellate counsel "also failed to make the same aforementioned arguments on appeal" that trial counsel omitted.  Pet. 18-19, ECF No. 1.  The state court rejected this claim under both prongs of *Strickland*:

> [Tucker] does not specifically identify which claims appellate counsel should have raised on appeal or why it was objectively unreasonable not to raise those claims, instead, offering a blanket assertion that appellate counsel should have raised every issue trial counsel failed to raise.  However, the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal.  *See Jones*, 463 U.S. at 751–52.  Moreover, to the extent [Tucker] asserts appellate counsel should have raised the various claims trial counsel did not raise, appellate counsel could have reasonably chosen not to raise on appeal claims that would have been barred under Rule 5:25.  Further, [Tucker] offers no explanation why any of his contentions under claim (III) would have been reasonably likely to succeed on appeal.

Br. Supp. Mot. Dismiss Ex. 3 at 17, ECF No. 14-3.  I agree that this claim concerning alleged appellate counsel deficiencies fails under *Strickland* and *Jones*, and I must dismiss this claim under § 2254(d).

## III. CONCLUSION.

For the stated reasons, I will grant the respondent's Motion to Dismiss.

A separate Final Order will be entered herewith. I decline to issue a certificate of appealability because Tucker has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not find the court's procedural ruling to be debatable or wrong.

DATED: March 25, 2025

/s/ JAMES P. JONES
Senior United States District Judge